IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANGIENITA ROBERSON, : | | |
| o/b/o J.J. Hooks, a minor, : | | |
| : | | |
| **Plaintiff,** : | | |
| : | | |
| v. : | No. 5:14-cv-127 (MTT) (CHW) | |
| : | | |
| CAROLYN W. COLVIN, : | Social Security Appeal | |
| Acting Commissioner of Social Security, : | | |
| : | | |
| **Defendant.** : | | |
| : | | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Angienita Roberson's application filed on behalf of J.J. Hooks, a minor. 42 U.S.C. § 405(g). Because the record indicates that Plaintiff may satisfy Listing 103.03(C)(2), it is **RECOMMENDED** that Plaintiff's case be **REMANDED** to the Commissioner pursuant to "sentence four" of 42 U.S.C. § 405(g).

## BACKGROUND AND MOTION TO AMEND

Plaintiff Angienita Roberson filed an application for Title XVI benefits on behalf of J.J. Hooks, a minor, in April 2011. (R. 76). According to Plaintiff, Hooks, who was 12 at the time of his administrative hearing, (R. 44), suffers from asthma, rhinitis, and ADHD. (Doc. 14, p. 4). Plaintiff's application was denied initially and on reconsideration, (R. 76–77), and then, following a hearing, a reviewing administrative law judge ("ALJ") found that Plaintiff was not "disabled" within the meaning of the Social Security Act in September 2012. (R. 19–38). Although Plaintiff submitted post-hearing records to the ALJ, including records from MCG Health dating from December 2011 to August 2012, (Ex. 11F), the ALJ did not consider those

records, presumably because Plaintiff did not file them in a timely manner.[1] The MCG Health records were properly before the Appeals Council, however, and because they are now properly before this Court along with the other exhibits addressed by Plaintiff in her pending Motion to Amend the Administrative Transcript, it is **RECOMMENDED** that Plaintiff's Motion to Amend be **DENIED**.[2]

Although Plaintiff did not mention the drug "prednisone" by name in her briefs to the Court, Plaintiff appears to argue that the MCG Health records, which the ALJ did not consider, along with earlier records which the ALJ did consider, show that Hooks received prednisone in a dosage and frequency sufficient to satisfy Listing 103.03(C)(2) ("asthma"). Because the Commissioner did not evaluate the MCG Health records, which do indeed suggest that Plaintiff satisfies Listing 103.03(C)(2), and because this Court cannot itself weigh the evidence, Plaintiff's case should be remanded for a reevaluation of the record in its entirety.

## STANDARD OF REVIEW

District courts have a limited role in reviewing claims brought under the Social Security Act. Review of the Commissioner's decision is restricted to a determination of whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Consequently, a court's role in reviewing claims brought under the Social Security Act is quite narrow.

---

[1] *Cf.* (R. 47) (indicating that the ALJ would hold the record open until August 24), *with* (Doc. 13-1, p. 17) (indicating that Plaintiff submitted the MCG Health records on August 26).

[2] Of the three exhibits discussed by Plaintiff in her Motion to Amend, only one, a September 2012 letter brief, is arguably not in the official administrative transcript. The September 2012 letter brief, though, is nearly a word-for-word duplicate of an August 2012 letter brief that is already on file. *Cf.* (Doc. 13-3, p. 1–3), *with* (R. 202–204).

District courts must defer to the Commissioner's factual findings. Courts may not decide facts, re-weigh evidence, or substitute their judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); s*ee also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). Courts must scrutinize the entire administrative record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. Even if the evidence preponderates against the Commissioner's decision, though, the decision must be affirmed if it is supported by substantial evidence. *Id.*

The Commissioner's findings of law are given less deference. Courts must determine if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). Courts must therefore consider any questions of law *de novo*, and "no . . . presumption of validity attaches to the [Commissioner's] conclusions of law, including determinations of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). The Commissioner's failure to apply the correct legal standards or to provide a sufficient factual basis for the court to determine that the correct legal standards have been followed is grounds for reversal. *Id.*

## EVALUATION OF DISABILITY

Persons under the age of 18 are "disabled" for purposes of receiving Title XVI benefits if they have "a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

When analyzing the issue of disability for persons under the age of 18, the ALJ uses a three-step sequential evaluation procedure. 20 C.F.R. § 416.924(a). At step one, the ALJ determines whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). At step two, if the child is not engaged in substantial gainful activity, the ALJ determines whether the child has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.924(c). At step three, the ALJ determines whether the child's impairment or combination of impairments meets or is medically or functionally equal to one of the listings, and otherwise satisfies the duration requirement. 20 C.F.R. § 416.924(d).

To determine whether the child's impairment functionally equals a listed impairment, the ALJ must consider six "domains," which are "broad areas of functioning intended to capture all of what a child can and cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains include: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To satisfy the "functional equivalent" standard, the child must have either "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

## THE ALJ'S FINDINGS

Following the three-step evaluation procedure set-forth in 20 C.F.R. § 416.924(a), the reviewing ALJ issued an unfavorable decision on September 14, 2012. At step one, the ALJ found that claimant had not engaged in substantial gainful activity since at least April 28, 2011, his application date. (R. 22). At step two, the ALJ found that claimant suffered from the

following severe impairments: "Asthma and Attention-Deficit Hyperactivity Disorder." (*Id.*). The ALJ also determined that claimant suffered from the non-severe impairment of rhinitis. (*Id.*). At step three, the ALJ found that claimant did not have an impairment or combination of impairments meeting or medically equaling one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23). The ALJ specifically noted that "the medical record [did] not include evidence . . . consistent with the conclusion that the claimant's condition meets the criteria for section[] . . . 103.03C." (*Id.*). The ALJ also determined that claimant did not have an impairment or combination of impairments that functionally equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). Specifically, the ALJ considered the six "domains" and determined that claimant had (1) no limitation in acquiring and using information; (2) no limitation in attending and completing tasks; (3) no limitation in interacting and relating with others; (4) a less-than-marked limitation in moving about and manipulating objects; (5) no limitation in his ability to care for himself; and (6) a less-than-marked limitation in his health and physical well-being. (R. 30-37). Therefore, the ALJ found that claimant was not "disabled" within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff raises two grounds for relief, one relating to whether Hooks's impairments medically equal any of the listed impairments, and the other relating to whether Hook's impairments functionally equal any of the listed impairments. Because the record indicates that Hooks may satisfy the requirements for disability under Listing 103.03(C)(2), and because a reevaluation of the evidence is therefore warranted, this Recommendation will not address Plaintiff's functional equivalence arguments. On remand, however, should the Commissioner find that Plaintiff does not, in fact, satisfy the requirements for disability under

Listing 103.03(C)(2), the Commissioner should then determine whether Plaintiff's impairments functionally equal any of the listed impairments by reevaluating Plaintiff's abilities at each of the six domains.

With regard to Plaintiff's medical-equivalence argument, the record indicates that Plaintiff may satisfy Listing 103.03(C)(2) ("asthma"). That Listing requires, in relevant part, "short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 103.03(C)(2).

In arguing to this Court that the Commissioner erred in failing to find Hooks disabled under Listing 103.03(C)(2), Plaintiff relies upon records from MCG Health which were not considered by the ALJ, but which were properly before the Appeals Council. *See Ingram v. Comm'r*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous"). The MCG Health records indicate that Hooks took prednisone for eight to ten days in December 2011, (R. 338, 354), and then for ten days in February 2012. (R. 348). An earlier record which the ALJ did consider indicates that Hooks also took prednisone in April 2011.[3] (R. 249–250) ("he was seen by Dr. Mountain last month and required treatment with systemic steroids"). Although that earlier record does not refer to prednisone by name, the record does cross-reference Plaintiff's December 2010 Prednisone treatment, *see id.* ("he . . . needed steroids in December 2010"), thereby suggesting that the "systemic steroid" in question was prednisone.

---

[3] Specifically, the record, which is dated May 2011, states: "he was seen by Dr. Mountain last month and required treatment with systemic steroids." (R. 249). Although the record does not refer to Prednisone by name, the record does cross-reference Plaintiff's December 2010 Prednisone treatment: "he . . . needed steroids in December 2010." (*Id.*).

Together, these three records, only one of which was considered by the ALJ, appear to show that Hooks took prednisone for an average of more than 5 days per month for at least 3 months during a 12-month period. They therefore indicate that Hooks met the requirements for disability under Listing 103.03(C)(2), and that the Commissioner's decision is consequently "erroneous." *Ingram*, 496 F.3d at 1262.

It is possible that Hook's own failure to take his prescribed albuterol resulted in the February 2012 prednisone treatment, but this mere possibility is not sufficient for the Court to draw the conclusion that Hooks did not satisfy the requirements of Listing 103.03(C)(2). The February 2012 record reads, in relevant part:

> Despite a lower FEV1 than his baseline, he is not using albuterol. Thus, he received asthma education by Vickie Redd, R.N. who reviewed proper use of medications . . . .
>
> For his asthma exacerbation, he will take prednisone . . . .
>
> (R. 348)

Although this passage may indicate that Hooks would not have been administered prednisone if he had taken his albuterol, this Court is not authorized to weigh the evidence and make such a finding of fact. *See Moore v. Barnhart*, 405 F.3d. 1208, 1211 (11th Cir. 2005) (noting that the limited standard of review "precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence"). Rather, the Court is authorized only to determine whether the Commissioner's findings are supported by substantial evidence. *See, e.g.*, *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (noting that a finding of failure to follow prescribed treatment must be supported by substantial evidence). Because the ALJ did not have all the relevant evidence before him, because the Appeals Council did not evidence that it adequately considered both the "new" MCG Health records and Listing 103.03(C)(2) in its denial of review, and because this Court cannot itself determine whether the Commissioner's

decision was "erroneous," it is recommended that Plaintiff's case be remanded to the Commissioner for a reevaluation of the evidence.

## CONCLUSION

After a careful review of the record, it is **RECOMMENDED** that Plaintiff's case be **REMANDED** to the Commissioner. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 17th day of July, 2015.

s/ Charles H. Weigle_____  
Charles H. Weigle  
United States Magistrate Judge